Henderson v. Railroad Co., 78 N. Y. 423.    See, also, Coatsworth v. Railroad Co., 156 N. Y. 451, 51 N. E. 301.

The plaintiffs are clearly entitled to a mandatory injunction, restraining the defendant from longer maintaining the nuisance complained of, and to the costs of this action.

Ordered accordingly.

(38 App. Div. 22.)

COOPER v. ILLINOIS CENT. R. CO. et al.

(Supreme Court, Appellate Division, First Department.    February 24, 1899.)

1. EXECUTORS—TRUSTEES—CORPORATION BONDS—REGISTRY—CONVERSION.

A testatrix left property to the executor in trust, consisting in part of railroad bonds, which could be registered, after which transfer could be made only by the owner or his duly-authorized attorney.  The executor registered them in his name as executor, and five years after death of testatrix died, and eight years thereafter one of two substituted trustees had the bonds discharged from registration and converted them to his own use.  *Held*, that the presumption was that the debts and legacies of testatrix's estate were paid, and that the executor at his death held the bonds as trustee, and hence title passed to his substituted trustees, and the action of one of them in discharging the bonds from registry and selling them carried the title to them.

2. SAME—NEGLIGENCE OF THE CORPORATION.

The negligence of the railroad, knowing them to be trust property, in permitting one of the trustees to discharge the bonds from registration without the other's knowledge, made it liable to the other trustee for their value; the discharge being a ministerial act calling for the exercise of judgment and discretion, and to be performed by both jointly.

3. BROKERS—NEGLIGENCE.

Bonds belonging to a trust estate were presented to certain brokers at a time when they were registered in the name of S., executor.  Some days later, when left with them for sale, they had been discharged from registry, and were payable to bearer.  It did not appear that the brokers had any knowledge that the executor was dead, or of the condition of the estate of which he was executor.  *Held* that, on sale by them of such bonds, they were not liable to the estate, because the bonds were in fact a part of a trust fund, and illegally sold.

Appeal from judgment on report of referee.

Action by Marin L. B. Cooper, as sole surviving trustee under the will of Mary T. Wood, deceased, against the Illinois Central Railroad Company, impleaded with Charles C. Macy and William F. Pendleton.   There was a judgment for plaintiff against the Illinois Central Railroad Company, and it appeals.    Affirmed.

The following is the opinion of the court below (HAMILTON ODELL, Referee):

By her will, Mary T. Wood gave the rest and residue of her estate to trustees, in trust to hold and manage the same for the benefit of her daughter during the latter's life, and upon her death to pay over such rest and residue to the daughter's children.  The will directed the executors and trustees to "convert all real estate into personalty, by a sale and conveyance of the same," and to "invest said rest, residue, and remainder of my estate safely, at interest, in such way and manner" as they might deem best.  The testatrix died in 1882.  Only one of the trustees (John W. Sedgwick) survived her.  He died in April, 1887.  By an order of the supreme court made in January, 1888, Marin L. B. Cooper (the plaintiff) and Clarence W. Sedgwick were "appointed and substituted in the place and stead of Ebenezer W. Arms and John W.

Sedgwick, deceased, as trustees under the said will of Mary T. Wood, deceased, to carry out said unexecuted trust created under said will for the benefit of said Mary A. Sedgwick, and vested with the same title in and to said property so held in trust, and with the same rights, powers, duties, and privileges, as were vested in and possessed by the original trustees in said will named." At the time the said order was made, the trust property consisted in part of the twelve mortgage bonds of the defendant the Illinois Central Railroad Company which are the subject of this controversy. These bonds, when issued, were ordinary coupon bonds, payable to "holder" on January 1, 1951, but contained this provision: "The holder hereof may have the ownership of this bond registered on the books of the said railroad company, such registry being noted on the bond, after which no transfers shall be valid unless made on the said books by the registered holder in person, or by his attorney, duly authorized, and noted on the bond; but the same may be discharged from registry by being in like manner transferred to bearer, after which it shall be transferable by delivery." Availing himself of this permission, John W. Sedgwick on January 23, 1886, caused the bonds to be registered in his name, "Executor of the Estate of Mary T. Wood." Clarence W. Sedgwick and the plaintiff were the executors of his will. They took possession of the bonds, which were then, and which they allowed to remain, in a tin box in a small vault or safe in a safe-deposit company. The plaintiff had possession of the key of the box, and his co-trustee, Clarence W. Sedgwick, had possession of the key of the safe. In May, 1895, Clarence W. Sedgwick obtained possession of the bonds without the plaintiff's consent or knowledge, and presented them to the defendant railroad company, and procured them to be transferred to bearer, and so registered. Having thus made them transferable by delivery, he sold them through the defendants Macy & Pendleton, appropriated the proceeds to his own use, and a few weeks later died. In his complaint the plaintiff sets forth substantially the more material facts above narrated (without identifying the alleged malefactor), and avers that the defendants Macy & Pendleton had knowledge that the bonds were part of the trust fund referred to; and, as relief, he demands that the defendants be required "to replace to the plaintiff, as trustee, bonds of like kind and value as those so sold and disposed of," or to account to the plaintiff for the value thereof.

The railroad company objects that the plaintiff has failed to show any title to the bonds; that is, as I understand it, that the title to the bonds never vested in him and his co-trustee. The argument is that the bonds were registered in the name of John W. Sedgwick, executor; that it was expressly stipulated upon their face that, in case of registration on the books of the company, no transfer should be valid "unless made on the said books by the registered holder in person, or by his attorney duly authorized, and noted on the bond"; that the bonds were not transferred by the registered holder or by his attorney, but by Clarence W. Sedgwick, acting as trustee; that such transfer was unauthorized and irregular, and did not operate to devest the title of the estate of Mary T. Wood, but was wholly inoperative and void. My opinion is that the objection is not well founded. Mary T. Wood died in 1882,—thirteen years before the transfer of the bonds by Clarence W. Sedgwick. The plaintiff testifies that her estate has not yet been settled. There can be no reasonable doubt that all the duties of the executor, as such, were performed prior to his death, in 1887, and that whatever property of the estate then remained in his hands he held only as trustee for the purposes of the trust created by the will. The will is dated in 1868. It directs the payment of the debts of the testatrix, and gives two legacies to two grandchildren in case they live to become twenty-one years of age. All the rest of the estate is given in trust. In the absence of proof to the contrary, it may be safely presumed, I think, that the debts have been paid, and that the legacies either were paid, or lapsed by the death of the legatees during minority, and fell into the residue of the estate. (One of the legatees was probably the Clarence W. Sedgwick above mentioned.) It follows that, no matter in whose name the bonds were registered, they formed part of the trust fund, the title to which was in John W. Sedgwick, as trustee, at the time of his death, and in Clarence W. Sedgwick and Cooper, the plaintiff, as substituted trustees, at

the time of the transfers in question. The bonds were in their possession as such substituted trustees. They were the only legal representatives of the Wood estate. The railroad company recognized their title, and their right to have the bonds transferred under the order of January 4, 1888. Under the circumstances, it seems plain to me that the objection that the substituted trustees took no title to the bonds ought not to be sustained.

It is denied by all the defendants that the plaintiff has established any cause of action. This requires an examination of the plaintiff's claim. Briefly stated, it is, as against the railroad company, that the company wrongfully permitted Clarence W. Sedgwick, one of the substituted trustees, to change the registration of the bonds from the name of John W. Sedgwick, executor, to bearer, so making them transferable by delivery, and enabling Sedgwick to convert them to his own use. It is insisted in the plaintiff's behalf that the claim is to be determined by the rules which define the liability of a corporation for permitting the transfer of trust stock or stock standing in the name of a trustee. These rules are well settled, and are not disputed. There is no presumption that a trustee has authority to sell or otherwise dispose of the property belonging to a trust estate. When stock stands upon the books of a corporation in the name of a trustee, it is the duty of the corporation, before permitting a transfer, to inquire concerning the trust and the trustee's authority. If it fails in this duty, and injury comes to the beneficiary through a wrongful transfer by the trustee to which the corporation is a party, the corporation is liable. Loring v. Salisbury Mills, 125 Mass. 138; Bayard v. Bank, 52 Pa. St. 232; Stewart v. Insurance Co., 53 Md. 564; Marbury v. Ehlen, 72 Md. 206, 19 Atl. 648; Duncan v. Jaudon, 15 Wall. 175. In the Loring Case the court said: "If, by the form of the certificate, or otherwise, the corporation has notice that the present holder is not the absolute owner, but holds the shares by such a title that he may not have authority to transfer them, the corporation is not obliged, without evidence of such authority, to issue a certificate to his assignee; and if, without making any inquiry, it does issue a new certificate, and the rightful owner is injured by its negligent and wrongful act, the corporation is liable to him, without proof of fraud or collusion. All the authorities affirm such liability where the corporation has notice that the present holder is a trustee, and of the name of his cestui que trust, and issues the new certificate without making any inquiry whether his trust authorizes him to make a transfer." And in the Bayard Case, at page 238, Judge Strong said: "A stakeholder cannot very safely pay over to him who has the legal right, when he knows another to be the beneficial owner. With equal reason, at least, ought it to be held illegal for a corporation to aid in destroying the title of a cestui que trust to its stock without being satisfied that the trustee had authority to part with and destroy it." So in Marbury v. Ehlen, at page 217, 72 Md., and page 650, 19 Atl.: "There being no presumption of the right to sell, a corporation ought to be held affected with notice that a trustee is probably violating his trust when he attempts to sell trust property, known to the corporation to be such, without the production of authority for making the transfer." The point is that the corporation, by permitting transfer to a third party, becomes a participant in the spoliation of the trust estate. It assists the trustee to do the immediate—the very—act which wastes the trust estate, and causes injury to the beneficiary, and which it was its duty to prevent, being put upon inquiry, and so charged with knowledge that the act (that is, the disposition by the trustee of the trust property) is beyond the trustee's power, and therefore unlawful. There is a noticeable difference between the present case and the class of cases above referred to. The plaintiff and Clarence W. Sedgwick, as substituted trustees, had the title to, and were in possession of, the bonds. There is no rule that I am aware of that requires a trustee, if trust funds are invested in such securities, to have the securities registered. The new trustees had the right to have the registration in the name of the deceased executor canceled. They were not bound to have the bonds re-registered in their own names, but might restore them to their original negotiability by having them transferred to bearer. The railroad company had no right to insist that the bonds should be registered in the names of the new trustees, or registered at all. If the application to have them transferred to bearer had been made by both trustees, the

railroad company could not have refused, or, if it had refused, could have been compelled to comply with it. The mere act of taking the bonds out of registration in the name of a dead man, and making them negotiable by delivery, would not have been a violation of any duty on the part of the trustees. It would not have been an act which the railroad company could have objected to, or which would have put it upon inquiry, or which would even have justified any suspicion on the part of the company that it was being done by the trustees for an improper purpose. In permitting the transfer to be made, the company would only have assisted the trustees in reducing the bonds more completely to their possession,—a very different thing from uniting with them in an act of conveyance, by which the property in the bonds would pass from the trustees, and be vested in some other party. So that, it seems to me, the real question is, so far as the railroad company is concerned, whether or not the company was at fault, and guilty of actionable negligence, in permitting the bonds to be discharged from registry, and made payable to the bearer, on the application of one of the two trustees.

Trustees, however numerous, constitute, in law, a single person. As Perry expresses it, "They all form, as it were, one collective trustee." Perry, Trusts, § 411. When a trust or authority is delegated for private purposes, the concurrence of all who are intrusted with the power is necessary to its due execution. Sinclair v. Jackson, 8 Cow. 583; Wilder v. Ranney, 16 Wkly. Dig. 478; Wilbur v. Almy, 12 How. 180. One of several trustees, therefore, cannot make a valid contract relating to the trust estate. He cannot lease, incumber, sell, or otherwise dispose of the trust property. Berger v. Duff, 4 Johns. Ch. 368; Hertell v. Bogert, 9 Paige, 52; Anon. v. Gelpcke, 5 Hun, 255; Brennan v. Willson, 71 N. Y. 507; Cox v. Walker, 26 Me. 504. He may collect rents, dividends, etc. Williams v. Nixon, 2 Beav. 472. Payment of a mortgage to one of two trustees is a valid payment. Bowes v. Seeger, 8 Watts & S. 222. Acts that are of a ministerial nature, he may do. Acts that call for the exercise of judgment and discretion, he may not do. Now, when Sedgwick and the plaintiff became substituted trustees, and were vested with the title to the trust property, the property consisted, in part, of bonds of a special class and character; that is, of registered nonnegotiable bonds of the Illinois Central Railroad Company. By the act of one trustee, with the assent and assistance of the railroad company, they were converted into bonds of a different class and character; that is, into nonregistered bonds, payable to bearer. This exchange of securities (for so in fact it was,—this conversion of nonnegotiable securities into securities that were negotiable and transferable by delivery) was in no sense a ministerial act. The investment of trust funds, the substitution of one security for another, the doing of any act by which the character or security of the trust investment may be in any respect changed or affected, these are matters that call for the exercise of judgment and discretion, and must therefore be performed by the trustees jointly. Sedgwick had no right, without the assent of his co-trustee, to have the bonds changed from nonnegotiable bonds to bonds payable to bearer. The railroad company should have denied his application, and must abide the consequences. I think that the plaintiff is entitled to judgment against the railroad company for the value of the bonds.

As to the defendants Macy & Pendleton, the complaint should be dismissed. Their liability is asserted because, as alleged in the complaint, they "were advised and had knowledge that the said bonds were a part of the trust fund hereinbefore mentioned." The proof is that, when the bonds were first presented to them, they were registered in the name of John W. Sedgwick, executor. Some days later, when left with them for sale, they had been discharged from registry, and were payable to bearer. It does not appear that they had any knowledge that the executor was dead, or any knowledge of the condition of the Wood estate. They had a right to assume that the change in registration had been properly made, and to rely upon the rule of law that an executor has title to the personal assets of the estate, with full power of disposition. Leitch v. Wells, 48 N. Y. 585; Barry v. Lambert, 98 N. Y. 308; Prall v. Tilt, 28 N. J. Eq. 479; Bayard v. Bank, 52 Pa. St. 232; Wood's Appeal, 92 Pa. St. 379. I cannot see that they are chargeable with any fault or negligence whatever. I do not think that the plaintiff is concluded by the

judgment in Sedgwick against Macy, which is set forth in the supplemental answer of the defendants Macy & Pendleton.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Fisher A. Baker, for appellant.
John J. Crawford, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of referee.

---

## In re LONG.

(Supreme Court, Appellate Division, Second Department. May 2, 1899.)

TAXATION—COLLECTION OF TAXES—CHANGE IN COLLECTORS.

> Prior to the expiration of the term of office of a receiver of taxes, the tax roll and warrant for the collection of a tax were delivered to him, but the return day of the warrant had then passed. His successor in office qualified, after which a statute was enacted extending the time for the collection of the tax. *Held* that, as there was no valid process for the collection of the tax until the enactment of the statute, the process should be enforced by the person then in office.

Appeal from special term.

Application by George T. Long to compel Edmund G. Sutherland, late receiver of taxes of the town of White Plains, to turn over the books and papers of his office to petitioner, his successor in office. From an order granting the application, Edmund G. Sutherland appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

John M. Digney, for appellant.
H. C. Henderson, for respondent.

CULLEN, J. The object of this application is to obtain possession of the tax roll of the town of White Plains for the year 1898, and the warrant for the collection of the tax. The real controversy is as to whether the petitioner, or his predecessor in office, is entitled to collect that tax and receive the compensation for such service. The appellant was elected receiver of taxes at the town meeting in 1897, under a statute (chapter 52, Laws 1897) which provided that he should hold his office for two years, and until his successor should be elected and qualified. The petitioner was elected receiver of taxes of the town on the 28th day of March, 1899, and on March 30th made and filed his oath of office. He filed his official bond on April 3d, and thereupon demanded of his predecessor the tax roll and warrant. The taxes for 1898 were not confirmed and levied by the board of supervisors until the 17th day of March, 1899. In answer to the petitioner's application, the appellant, Mr. Sutherland, made affidavit that the tax roll and warrant were delivered to him on that day by the supervisor of the town, and that since that time he has proceeded with the collection of the tax. The affidavit of one Edwin R. Hopkins is to the effect that he, for the supervisor, made the com-

57 N.Y.S.—59